# Robbins *v.* Locust Mountain Savings & Loan Association, Appellant.

*Ejectment—Deed—Alteration of deed—Record—Notice—Conditional verdict.*

In an action of ejectment it appeared that the common source of title was one Jay who some years before the institution of the suit agreed orally to convey the premises in dispute to one Devins. Jay executed a deed to Devins and delivered it to his own attorney with instructions to deliver the deed to Devins, when the purchase money, $700, should be paid. Devins entered into possession, but paid nothing. He contracted with one Pace to build a house thereon. Robbins, the plaintiff, furnished material for the house amounting to about $200. His attorney advised him that the best way to secure his claim would be to obtain title from Jay. Robbins subsequently arranged with one Yost to act for him as middleman to secure the deed from the attorney of Jay. Without either Jay's knowledge or Robbins's knowledge, the deed was altered by substituting Yost's name for that of Devins. Yost then took the deed and paid for Robbins $700 to Jay's attorney, and Jay thereafter received the money. Upon the delivery of the deed Yost placed it on record, and thereafter made a deed to Robbins which was also recorded. In the meantime Pace filed a mechanic's lien naming Devins and Yost as owners, and took judgment for the amount of his claim. Robbins attempted to have this judgment opened and petitioned that he might be permitted to intervene as a party defendant. The court refused to allow this on the ground that the deed under which he claimed was a forgery. The land was then sold, and the purchaser at the sheriff's sale after receiving a deed from the sheriff executed a bond and mortgage to the defendant. The defendant entered judgment on the bond accompanying the mortgage and became the purchaser of the premises. Subsequently Robbins received from Jay a quitclaim deed, reciting the circumstances, and then brought this ejectment. *Held,* that under all the circumstances of the case the court committed no error in allowing a verdict for the plaintiff conditioned upon his executing a deed for delivery to the defendant upon payment by the latter of $700, and thereupon judgment in favor of defendant.

Argued March 5, 1908. Appeal, No. 56, March T., 1908, by defendant, from order of C. P. Luzerne Co., Oct. T., 1906, No. 612, sustaining exceptions to report of referee in case of

.I. Robbins v. Locust Mountain Savings Fund and Loan Association.   Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Exceptions to report of Felix Ansart, Esq., referee.

FULLER, J., filed the following opinion:
This case strikingly shows how much trouble can be created by an individual who undertakes to buy a lot and build a house thereon without the means to pay for either.

Such was the humble origin from which proceeded a complex tissue of circumstances involving criminal blunder, if not actual crime, and the activities of a dozen lawyers.

The action is ejectment, and the learned referee reports that judgment should be entered in favor of the defendant. His conclusion is based upon the premise that the plaintiff, although vested with the legal title, is now estopped from asserting it because party or privy to a certain altered deed forming a link in the title set up by the defendant.

If that premise be correct the report should be sustained and judgment should be entered in favor of defendant.

If that premise be not correct the report should be overruled and judgment should be entered in favor of the plaintiff.

The exceptions present a great variety of propositions, and particularly propositions urging the incompetency of defendant's case on surrebuttal in which the matter of estoppel was advanced.   But the ends of justice can be fully met by restricting discussion at this stage to the simple question whether or not the plaintiff is justly estopped, under all the evidence, from maintaining his action.

To make a long story short and a confused story simple, I will undertake to state in as few possible words the history of the case as gleaned from the undisputed evidence and the referee's undisputed findings of fact.

The common source of title was one Jay.   He agreed, orally, about February 14, 1898, to sell for $700 to Devens, who took possession without payment.   Jay then placed in the hands of

his attorney N. a deed of that date duly signed and acknowledged for delivery to Devens, the grantee named therein, upon security or payment of the price. Devens, without taking deed, contracted with Pace to build a house, and materials therefor approximating $300 were furnished by Robbins. Devens occupied the house but paid nothing. Robbins, concerned about his claim, was advised by his attorney B. to pay the price and get the title from Jay. Following this advice he handed the money to B., who handed it to N., who handed it to Jay. Somebody then, without knowledge of Jay or Devens, erased the name of Devens as grantee in the said deed and inserted the name of Yost, who was a mere conduit, and made deed at once to Robbins. Both deeds were recorded. Pace filed a mechanic's lien against Devens and Yost, as owners or reputed owners, and obtained judgment. Robbins asked the court to open judgment and allow him to intervene as a defendant, averring ownership under deeds supra, but the court refused on ground that deeds were null by reason of alteration. At sheriff's sale on judgment, Harrower bought and then mortgaged to the defendant, who later caused sheriff's sale on bond accompanying mortgage and became purchaser. Robbins gave notice at last sheriff's sale that legal title was in Jay and only equitable title in Harrower. Afterwards Robbins received from Jay a quitclaim deed, reciting the circumstances, and then brought this ejectment.

The legal effect of the transaction between Jay and Devens, as decided by this court in Pace v. Yost et al., 10 Kulp, 538, virtually was to make Devens a vendee in possession with an equitable title under articles of agreement, and Jay, vendor, with the legal title. Therefore the precise legal situation is, that Robbins, who paid the purchase money and has the legal title of Jay, vendor, is plaintiff in ejectment against the association, which has the equitable title of Devens, vendee.

The plaintiff is not in any event entitled to an absolute judgment, as he evidently realized in making at the close of the trial the tender of deed upon payment of price, and in giving notice at the sheriff's sale to defendant.

But he is entitled to a conditional judgment as in eject-

ment to enforce payment of purchase money, unless debarred by an estoppel operating upon Jay and himself, or either of them, and preventing assertion of nonpayment.

The source of estoppel must be found in the delivery and record of the altered deed, which might induce a subsequent purchaser for value without notice to believe that the money had been paid.

There would be no estoppel unless (1) Jay or Robbins, one or both, should be held responsible for that performance, and (2) defendant association relying upon its verity became purchaser for value without notice.

Jay, in fact, was absolutely innocent, having no knowledge of the performance until long afterward, and, therefore, his responsibility must flow from the rule of agency, or from the rule of holding responsible the one of two innocent parties, whose act, though innocent, occasioned the loss.

Robbins did not know of the alteration until three months afterward, but, aside from that circumstance, he was an active participant in the whole performance, devised for his benefit by his attorney to secure his claim.

The conclusion is irresistible that Robbins at least, if not Jay, should be held responsible for acts well calculated to create in the mind of one who might examine the record the reasonable inference of payment.

In determining next whether the defendant association relied upon the verity of the recorded deed, it is necessary to presume, as there is no positive proof, that when it took from Harrower the mortgage which formed the inception of its purchase the record was examined in its behalf and the mortgage taken on faith thereof.

The estoppel is not complete without that presumption.

If the mortgage was taken without examination or inquiry, which is possible although not probable, or if it was taken upon faith of the mortgagor's assurance, which is within the range of probability, or if the security of the equitable interest was considered sufficient, reliance upon the record could not be claimed, and a vital ingredient of the defense would be lacking.

From positive proof of examination, we might presume reliance thereon, but in the absence of proof the vital question is, upon whom devolves the burden?

Does it devolve upon the defendant association, alleging estoppel, to prove affirmatively as an essential element that the record was examined, or upon the plaintiff Robbins, denying estoppel, to disprove the element?

General rules of evidence promptly suggest that the burden rests upon him who asserts an affirmative, and particularly upon him who asserts an estoppel, to establish his allegation, and I am unable to find that he is helped out in this particular in the present case by any legal presumption.

Upon this ground, if no other, the referee erred in finding estoppel.

If, however, we allow the defendant the benefit of presuming that it examined and relied upon the record, there still remains for consideration the question whether it purchased with or without notice of nonpayment.

In determining this question we may disregard the notice given at the sheriff's sale, because the inception of defendant's right was the mortgage and not the sale upon the bond accompanying the same.

But we are compelled to consider what reasonable inquiry should have been suggested by the record.

The proper record appurtenant to the mechanic's lien gave notice of the application by Robbins to intervene on the ground of ownership, suggesting the further reasonable inquiry, how he claimed ownership, and this inquiry would have led directly to the discovery that the price had not been paid by Devens but by Robbins, and that the original legal title, therefore, either remained in Jay or had been transferred to Robbins.

We may also mention that D. C. Harrower, brother and law partner of the Harrower who bought at sheriff's sale, was attorney for Pace in the mechanic's lien and scire facias thereon, as a significant circumstance bearing upon the purchasing Harrower's knowledge of the situation, and affecting the defendant, but we do not rely upon this circumstance, as it

54   ROBBINS *v.* SAVINGS & LOAN ASSN., Appellant.

Opinion of Court below—Opinion of the Court. [37 Pa. Superior Ct.

was not clearly brought out in the evidence nor mentioned in the argument.

The conclusion of the whole matter is that upon one ground or the other the finding of an estoppel was erroneous.

We hesitate long before disturbing the report of so learned, painstaking and conscientious a referee, but we are firmly convinced that Robbins paid his money in good faith, that he had no guilty complicity, although he was the intended beneficiary, in the performance of the attorneys, that the defendant has no just complaint under the evidence if allowed to retain the benefit of the equitable title, subject to payment of the price, and that substantial justice will be accomplished in strict accordance with legal principles by allowing Robbins to recover a conditional judgment.

We, therefore, sustain the twenty-fourth exception, overrule the conclusion of the referee that plaintiff is estopped from recovery, and direct judgment in favor of the plaintiff for the land described in the writ, upon condition that within twenty days he deposit with the prothonotary a general warranty deed for said land, duly signed and acknowledged, for delivery to the defendant association upon payment to the prothonotary for the plaintiff of $700, with interest from May 10, 1898, and thereupon judgment absolute shall be entered in favor of the defendant.

*Error assigned* was in sustaining exceptions to report of referee.

*Geo. H. Troutman,* with him *T. J. Chase* and *Walter G. Treibly,* for appellant.

*W. Alfred Valentine,* with him *G. Fred Lazarus,* for appellee.

OPINION BY ORLADY, J., July 15, 1908:

This action of ejectment, after being at issue, was referred to a referee, under the Act of March 23, 1870, P. L. 540, who made a report to which exceptions were filed, and after a hearing a judgment was directed to be entered in favor of the plaintiff

for the land described in the writ, upon condition that within twenty days he deposit with the prothonotary a general warranty deed for said land, to be delivered to the defendant association upon payment of $700 and interest to the prothonotary for the plaintiff, whereupon judgment absolute was to be entered for the defendant.

The common source of title was Rev. Stephen Jay, who agreed orally, about February 11, 1898, to convey the premises in dispute to George E. Devins, and pursuant to that agreement, he executed, with his wife, a deed in fee simple dated February 14, 1898, and placed it in the hands of one E. D. Nichols, Esq., his attorney, with instructions to deliver the deed to Devins when the purchase money, $700, should be paid.

Devins entered into possession of the premises under the verbal agreement about March, 1898, and began the erection of a building thereon under a contract with B. M. Pace, who furnished the greater part of the labor and materials for the building. Robbins, the present plaintiff, also furnished material amounting to about $300, and upon consultation with his attorney, was advised that the best way to secure his claim would be to obtain title to the premises from Jay. Robbins subsequently arranged with one E. M. Yost, who agreed to act as a middleman to secure the deed from the attorney of Jay, who had retained it for the reason that the purchase price had not been paid, and when Yost agreed to pay this sum, the deed was altered by erasing the name and residence of George E. Devins, the grantee therein named, and substituting therefor the name and residence of E. M. Yost. He as attorney for Robbins, then paid Nichols the $700 handed to him by his client, which Nichols immediately paid over to his client, Jay, the original grantor. The altered deed was delivered to Yost, who put it on record the same day, and under his agreement to act as middleman, he, Yost, made a deed to Robbins for the premises in dispute, which was subsequently placed on record.

In the meantime, Pace, one of the contractors of the building, filed a mechanic's lien, naming Devins and Yost as owners, and on June 17, 1899, took judgment for the amount of his claim. After judgment had been entered on the mechanic's

lien, Robbins endeavored to have it opened, and petitioned that he might be permitted to intervene as a party defendant, which was refused by the court, and the land was sold on a levari facias on the mechanic's lien judgment by the sheriff to one Frank B. Harrower, to whom the sheriff made his deed. On the following day Harrower and his brother, who were attorneys, executed a bond and mortgage to the defendant association, upon the premises in dispute. The real estate with the improvements is admittedly worth $3,000 and more.

After a full examination of the whole testimony, it appears clearly that Jay, the original grantor, was innocent of any wrongdoing throughout the transaction and knew nothing of the change made in his deed to Devins. It is equally clear that Robbins did not know of the alterations in the deed until three months afterwards, but it is as certain that he was a participant in the transaction, which was devised for his benefit by his attorney to secure his claim. The conclusion of the referee was that the plaintiff, although vested with the legal title, was estopped from asserting it because he was a party or privy to the alteration of the deed which forms a link in the title set up by the defendant, but we feel that the decision of the court below is fully warranted under the facts.

While there is no positive proof that, when the defendant association took the mortgage from Harrower, which formed the inception of their title, it had actual knowledge of the forgery, yet it must be held to have known the facts which a search would have disclosed, and an examination would have shown such a tortuous course of dealings, aptly described by the court below as "a complex tissue of circumstances, involving criminal blunder if not actual crime," that if a further and fuller inquiry had then been made the whole truth would have been developed. Athwart the path of the defendant's title lay this forged deed with the distinct notice of the adjudication by the court prior to the sheriff's sale that it was a forgery. Under all the facts, we feel that the lower court was correct in holding "That Robbins paid his money in good faith, that he had no guilty complicity although he was the intended beneficiary in the performance of the attorneys; and that the

defendant has no just cause of complaint, if allowed to retain the benefit of the equitable title, subject to the payment of the original purchase price of the lot," which will be doing substantial justice between these parties.

The assignments of error are overruled and the judgment is affirmed.